## Case No. 728.

### In re BAILEY.

[2 Sawy. 200.] [1]

District Court, D. Oregon. June 1, 1872.

"ARMIES" OF THE UNITED STATES DOES NOT INCLUDE MARINES—ACT JULY 17, 1862.

The word "armies," as used in the acts of congress, and particularly in section 21 of the act of July 17, 1862, (12 Stat. 597,) [admitting to citizenship aliens enlisted in the armies of the United States upon proof of one year's residence, and without previous declaration of intention,] does not include "marines."

[In the matter of Robert Bailey's application for naturalization. Denied.]

Section 21 of the act of July 17, 1862, (12 Stat. 597,) provides: "That any alien, of the age of twenty-one years and upwards, who has enlisted or shall enlist in the armies of the United States, either the regular or volunteer forces, and has been or shall be here-

after honorably discharged, may be admitted to become a citizen of the United States, upon his petition, without any previous declaration of his intention to become a citizen of the United States, and that he shall not be required to prove more than one year's residence within the United States, previous to his application to become such citizen; and that the court admitting such alien, shall, in addition to such proof of residence and good moral character as is now provided by law, be satisfied by competent proof of such person having been honorably discharged from the service of the United States as aforesaid."

"On May 6, 1872, Robert Bailey presented his petition in this court praying to be admitted to become a citizen of the United States, under said section. The evidence produced upon the hearing of the petition satisfactorily showed that the petitioner was born in England more than twenty-one years prior to the application, and that on May 14, 1866, he enlisted in the marine corps of the United States, from which he was honorably discharged on May 14, 1870, and that he was otherwise qualified to be admitted to citizenship under said section."

The court being in doubt whether the petitioner's case came within the statute, the matter was continued for advisement.

DEADY, District Judge. The case turns upon the question, does the phrase "armies of the United States" include "the marine corps" of the United States?

The matter was submitted by the petitioner without argument, and I have not been able to find any direct authority upon the question. It may be admitted that the word armies or army, in its unlimited and most general sense, might be taken to include all the organized and armed power of the republic—its fighting forces, whether operating on sea or land, or both. But such does not seem to be the sense in which it has been used in prior acts of congress. The constitution, (article 2, § 2,) in providing that "the president shall be commander-in-chief of the army and navy of the United States," recognizes them as different and distinct bodies or organizations. For some years after the organization of the government, the term "army" was not used in the legislation of congress. At the first session of congress, after the adoption of the constitution, congress passed an act "to adapt to the constitution of the United States the establishment of troops," raised under the resolution of the continental congress of October 3, 1787, (1 Stat. 95.) This was the nucleus of the present army of the United States. No mention is made in the act of seamen or marines, and at the time, the United States had neither a navy nor a marine corps. The act does not use the term "army," but describes the force as "troops in the service of

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

the United States," and the organization as an "establishment."

This act was superseded by the "act for regulating the military establishment of the United States," passed April 30, 1790, (1 Stat. 119,) which provided that "1216 non-commissioned officers, privates and musicians" should be "raised for the service of the United States," and that with their officers they should be "formed into a regiment of infantry, to consist of three battalions and one battalion of artillery." This act was followed by the acts of March 3, 1791, (1 Stat. 222;) March 5, 1792, (1 Stat. 241;) March 28, 1792, (1 Stat. 246;) June 7, 1794, (1 Stat. 390;) all of which are entitled acts to fix the military establishment of the United States or to provide for protecting its frontiers. They all describe land forces as infantry and artillery, but are silent on the subject of the navy or marine corps. In section two of the last named one the word army is used for the first time. It declares that the pay of the "army" shall not be in arrears more than two months.

These were followed by the acts of March 3, 1795, (1 Stat. 430,) and of May 30, 1796, (1 Stat. 483,) both of which are entitled as acts concerning "the military establishment of the United States" and provided exclusively for land forces. Then came the act of April 27, 1798, (1 Stat. 552,) providing for an additional regiment of "artillerists and engineers." Next came the act of May 28, 1798, (1 Stat. 558,) which authorized the president "to raise a provisional army," and provides for the appointment of a lieutenant-general, who "may be authorized to command the armies of the United States." The act of March 2, 1799, (1 Stat. 725,) authorized the president "to augment the army." The act of March 3, 1799, (1 Stat. 749,) provides "for the better organizing of the troops of the United States." It uses the word army frequently, and provides (section 9) that a commander of the army shall be appointed and commissioned by the style of "general of the armies of the United States."

None of these acts contain any direct provision concerning seamen or marines, nor do the words army or armies as used therein appear to include in any instance persons serving in the navy or marine corps.

The first act for the establishment of the navy of the United States, was passed March 27, 1794, (1 Stat. 350,) and is entitled "an act to provide a naval armament." By this act the marines were constituted an integral part of the navy—each vessel having as a part of her officers and crew one lieutenant and a certain number of marines. The marines continued upon this footing until the passage of the act of July 11, 1798, (1 Stat. 594,) entitled "an act for the establishing and organizing a marine corps." This act provided for the organization, "in addition" to the then "military establishment," of a separate "corps of marines." The "companies or detachments" of this "corps" were to serve on the "armed vessels" of the United States, "in lieu of the quotas of marines" previously provided. This corps was made "liable to do duty in the forts and garrisons on the sea cost, or any other duty on shore," as the president might direct; and was to be governed by "the rules and articles of war, prescribed for the military establishment of the United States," and "the rules for the regulation of the navy * * * according to the nature of the service" in which they might be employed.

In the case of U. S. v. Freeman, 3 How. [44 U. S.] 564, it was held that although the marine corps was declared by the act of July 11, 1798, (supra,) to be an addition to the military establishment of the United States, yet the officers of the marine corps were not, therefore, included in the phrase "officers of the army."

In Wilkes v. Dinsman, 7 How. [48 U. S.] 125, it was held that prior to the act of 1798 the marines were a part of the crew of a vessel of the navy, and that ever since they have been associated with the navy, except when specially detailed by the president for service with the army; and that they were to be considered as embraced "in the spirit of the act of 1837 by the description of persons 'enlisted for the navy.'"

By the act of February 11, 1847, (9 Stat. 125,) congress provided that each officer and private "enlisted or to be enlisted in the regular army or regularly mustered in any volunteer company for a period not less than twelve months, who has served or may serve during the present war with Mexico," etc., should receive certain bounty land. I have not been able to find any decision or ruling as to whether this description of persons included marines or not. But it would appear, that although two battalions of the corps served with the army on land from Vera Cruz to the city of Mexico they were not considered as embraced in the description of persons—officers and privates of the army, and therefore, congress by joint resolution of August 10, 1848, (9 Stat. 340,) declared that the officers and privates "of the marine corps who had served with the army in the war with Mexico" should "be placed in all respects as to bounty land * * * on a footing with the officers and privates of the army."

So the act of September 28, 1850, (9 Stat. 520,) which gave certain lands as a bounty to the officers and privates "who performed military service in any regiment, company or detachment in the service of the United States," in certain wars, appears not to have been considered sufficient to describe seamen or marines, and accordingly congress by the act of March 3, 1855, (10 Stat. 101,) gave a similar bounty to the officers and privates of the navy and marines.

Is there anything in the matter of the act of 1862, or the circumstances under which it was enacted, to require or authorize the court to give the word army or armies a broader or different signification than appears to have been given to it in the instances above cited?

And first, the act was passed early in the progress of the late civil war, which in the main was a conflict upon land. It offered the boon or privilege of American citizenship to any person who would honorably serve in the armies of the United States, upon only one year's residence in the country, and otherwise upon terms more favorable than it was offered to others.

The object of the provision is apparent. The government was endeavoring to raise large bodies of troops to carry on a gigantic war upon land, and this was a means to aid in accomplishing that end—to induce aliens to enlist in the armies of the United States. By the act of July 20, 1861, (11 Stat. 318,) the maximum of the marine corps was fixed at 2,500 privates. It is not reasonable to suppose that congress would resort to this extraordinary means to keep up a marine corps of only 2,500 men, particularly when it is remembered that persons serving in that corps were by law entitled to the extraordinary privilege of prize money.

No alien has a right to become an American citizen, except upon such terms and conditions as congress, in legislating for the common weal, may prescribe. The act under consideration entitles persons who may honorably serve in the armies of the United States, to this high privilege, and the court is not authorized to enlarge it, by construction, so as to include a class of persons, who do not appear to be within its spirit or letter.

The term army or armies has never been used by congress, so far as I am advised, so as to include the navy or marines, and there is nothing in the act of 1862, or the circumstances which led to its passage, to warrant the conclusion that it was used therein in any other than its long established and ordinary sense—the land force, as distinguished from the navy and marines.

On a former occasion, this court decided orally, that a seaman was not within the provision of this act. Upon further and careful examination of the subject, I am unable to find any substantial reason for concluding that there is any difference in this respect between a seaman and a marine, or that persons who have served as either are to be regarded as having served in the armies of the United States, within the ordinary and long established meaning of that term. And if I am mistaken in this conclusion, the petitioner is not without remedy. Congress, if it sees proper, may extend the act of 1862, to marines by name, as it did the bounty land acts of February 11, 1847, and September 28, 1850.