### In re CHAMAVAS.

#### (Superior Court of Buffalo, Special Term. September 22, 1892.)

NATURALIZATION—QUALIFICATIONS—NAVAL SERVICE.

Act Cong. July 17, 1862, allowing an alien who has enlisted in the "armies" of the United States, and been honorably discharged, to become a citizen without previous declaration of intention, and on proof of one year's residence, does not apply to aliens who have served in the navy. In re Stewart, 7 Rob. (N. Y.) 635, disapproved. In re Bailey, 2 Sawy. 200, followed.

Petition of Alfred Chamavas for naturalization. Denied.

HATCH, J. The applicant presented his petition to this court, praying that he be admitted to citizenship, basing his claim to such distinction upon the provision of an act of congress passed July 17, 1862. The provision of the law reads:

"That any alien of the age of twenty-one years and upwards, who has enlisted or shall enlist in the armies of the United States, either the regular or volunteer forces, and has been, or shall be hereafter, honorably discharged, may be admitted to become a citizen of the United States, upon his petition, without any previous declaration of his intention to become a citizen of the United States, and that he shall not be required to prove more than one year's residence within the United States previous to his application to become such citizen; and that the court admitting such alien shall, in addition to such proof of residence and good moral character as is now provided by law, be satisfied by competent proof of such person having been honorably discharged from the service of the United States as aforesaid."

Petitioner established to the court's satisfaction that he was born in France; that he entered the naval service of the United States by enlistment therein on the 21st day of June, 1882, and served until June 15, 1883, when he was honorably discharged, that he again entered such service on the 14th day of October, 1883, and was honorably discharged therefrom on January 28, 1884. While serving on board the ship Trenton, under the last enlistment, on a cruise, near Japan, he was taken sick, was then returned by the government to the United States, and then discharged from service. In all other respects the evidence produced satisfied the requirements of the statute. This statute, as is seen from its date, was passed at a time when the government was sorely distressed, and its evident purpose was to induce aliens to enter the service of the United States by holding out to them as a reward the high distinction of citizenship in a much shorter period of time than they could otherwise obtain it. To my mind, no logical reason can be assigned upon the merits of service for discriminating between men who served in the navy and those who served in the army. The bravery and

self-sacrifice of the officers who commanded and the men who manned the guns in that tremendous engagement between the Monitor and the Merrimac in Hampton Roads pales not by the side of the supreme courage exhibited by the army at Gettysburg. Both marked a line beyond which the invader could not pass, and from each begun the decadence in the opposing force, in the respective spheres of operation. The service here shown was not rendered during the war, but the language of the statute is, "who has enlisted or shall enlist;" so the privilege still exists. Notwithstanding the palpable existence of legal merit in heroic service, a question of construction has arisen over the language, "who has enlisted or shall enlist in the armies of the United States." The difficulty is at once apparent, for no mention is made in terms of the navy or naval forces, marines or sailors. No amendment of this law has ever been adopted, while but two decisions have found their way into the books, and these are conflicting. The first was decided by McCunn, J., at special term in September, 1868. In re Stewart, 7 Rob. (N. Y.) 635. The conclusion reached in that case was that the applicant, being a naval veteran, who had served during the war, was entitled, under the act, to citizenship. The basis of this decision is that it was the policy of the law to encourge enlistments; that the service was required in both branches, and that service in each was equally meritorious; that the word "army" was of general signification, the equivalent of "military service;" that the use of the plural noun "armies" embraced all the armed forces of the government, naval as well as land. The question again arose in the district court of the district of Oregon, June 1, 1872. In re Bailey, 2 Sawy. 200. In this case, Deady, J., examines and cites the general statutes organizing the army of the United States, and also those establishing the navy, reaching the result that it was not the intent of the act to admit naval service to the benefit of its provisions, and therefore he denied the petition. A fair construction of the act under well-settled rules leads my mind to the conclusion that naval service is not embraced in its terms. Judge McCunn stated: "If the apparent exclusion of the navy from the benefit of the law in question was the result of inadvertence, the court should repair the omission by a generous construction." This rule, however, casts upon the court the burden of legislation, and an assumption of power which it does not possess. The rule is that decisions of federal courts must bind in the construction of United States statutes. Hintermister v. Bank, 64 N. Y. 214. While this rule is not absolute until the court of last resort has announced the law, yet, in the present case, I am impelled to follow the rule of the district court as being a more authoritative adjudication on the subject, coupled with my own view of the act. It follows from this that the petition must be denied, but it at the same time suggests that fairness requires remedial legislation.